# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| BEAR MGC CUTLERY CO., INC., | ) | |
| Plaintiff, | ) | |
| vs. | ) | CV-00-PT-3591-E |
| ESTES EXPRESS LINES, INC., | ) | |
| Defendant. | ) | |

ENTERED
FEB 22 2001

## MEMORANDUM OPINION

This cause comes to be heard upon plaintiff Bear MGC Cutlery Co.'s ("plaintiff") Motion to Remand, filed on December 27, 2000, and Defendant Estes Express Lines, Inc.'s ("defendant") Motion to Dismiss, filed on December 14, 2000.

## HISTORY

The plaintiff is an Alabama corporation. The defendant is a Virginia corporation that does business in Alabama. On November 24, 2000, the plaintiff filed the complaint at issue in the Circuit Court for Calhoun County, Alabama. The complaint alleges, in essence, that the defendant, who had contracted with the plaintiff to deliver certain goods to it, had failed properly to deliver the goods. The complaint alleges that the defendant damaged the goods during delivery and that the defendant somehow "deceived" the plaintiff. The causes of action listed as counts in the complaint are all brought under Alabama law: breach of contract, negligence and wantonness, outrage, and breach of warranty. No federal cause of action is directly claimed. The amount in controversy is $40,000 plus interest and costs.

1

The defendant filed its Notice of Removal with this court on December 14, 2000. Its basis for removal is that this court has jurisdiction over the controversy because it is "an action to recover for alleged loss, damage, delay, or injury to cargo transported in interstate commerce by a motor carrier wherein damages claimed exceed $10,000." The defendant claims that because it is a motor carrier subject to the jurisdiction of the Surface Transportation Board of the United States Department of Transportation, its liability is controlled exclusively by the provisions of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, which governs a motor carrier's liability for loss or damage to goods shipped in interstate commerce. In its motion in opposition to the plaintiff's motion to remand, the defendant refers the court to its Motion to Dismiss, filed on December 14, 2000, in which the defendant cites a host of case law in which courts have held that the Carmack Amendment preempts state law liability for interstate motor carriers. See Adams Express Co. v. Croninger, 226 U.S. 491, 507 (1913)(View that state laws and regulations not superseded by Carmack Amendment "untenable"); Strickland Transp. Co. v. American Distributing Co., 198 F.2d 546, 547 (5th Cir. 1952)(Texas damages law preempted by damages limitations in Carmack Amendment); Adelman v. Hub City Los Angeles Terminal, Inc., 856 F. Supp. 1544, 1551 (N.D. Ala. 1994)(Carmack amendment provides exclusive remedy in suits over goods lost or damaged during interstate transportation); American Eye Way, Inc. v. Roadway Package System, Inc., 875 F. Supp. 820, 820-821 (S.D. Fla. 1995)(Carmack Amendment preempts suits for negligence, fraudulent misrepresentation, and negligent misrepresentation under state law).

In opposition, the plaintiff notes that other courts have held that the Carmack Amendment does not preempt state common law claims, see Counter v. United Van Lines, Inc., 935 F. Supp. 505 (D. Vt. 1996), and that the state court should be allowed to determine whether

2

the claims are preempted, see Romney v. Lin, 105 F.3d 806 (2d Cir. 1997); Ben & Jerry's Homemade, Inc. v. KLLM, Inc., 58 F. Supp. 2d 315. (D. Vt. 1999). The plaintiff's reliance on these three cases is simplistic and a bit misleading. The court in Counter held that the Carmack Amendment did not preempt the plaintiff's specific claim because it had nothing to do with goods that had been lost or damaged after they had been shipped. 935 F. Supp. at 508. On the contrary, the goods in question in Counter had never been shipped. Id. The court found that the Carmack Amendment applied only to goods that actually had been transported and, therefore, did not preempt the plaintiff's claims. Id. With regard to Romney, an ERISA case, the Second Circuit concluded that the federal district court had every right to adjudicate the preemption issue. 105 F.3d at 813. That it stated that there are "some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule" does not translate into a blanket rule as the plaintiff implies. See Id. The plaintiff's use of Ben & Jerry's undermines, at least with respect to the District of Vermont, the plaintiff's argument that the Carmack Amendment does not preempt state law tort or contract claims. See 58 F. Supp. 2d at 319 ("... [the Carmack Amendment] has preempted state law."). It does, however, hold that defendants cannot remove a case not brought under the Carmack Amendment solely on the basis of federal preemption. Id. at 317.

  The plaintiff, citing no authority, argues that the fact that the defendant initiated an action against it in a Virginia state court suggests that the defendant has surrendered jurisdiction of the entire case to any and all state courts before which the plaintiff chooses to bring it. According to the plaintiff, the Virginia action amounts to a "waiver" of the right to remove this action. The defendant contends that the Virginia suit, which it initiated to recover unpaid freight charges from the plaintiff– an action that it claims is not covered by the Carmack Amendment– is

3

irrelevant to the instant case.[1]

## DISCUSSION

The instant case falls into a narrow category of removal cases: those in which the removal is based entirely upon alleged federal preemption of the state causes of action. Diversity jurisdiction does not exist in this case because the amount in controversy– $40,000– does not meet the jurisdictional prerequisite. See 28 U.S.C. § 1332. Federal question jurisdiction, exercised over suits "arising under the Constitution, laws, or treaties of the United States," ostensibly does not exist because the complaint does not purport to claim a federal cause of action. However, the defendant's argument that the plaintiff's state law claims can be removed to a federal court whose jurisdiction is based solely on federal preemption under the Carmack Amendment implicates the doctrine of "complete" or "super" preemption.

The doctrine of complete preemption is quite different from the concept of ordinary preemption. Ordinary preemption concerns itself with the issue of whether the plaintiff's state law claims may be dismissed because they are preempted by federal law. Blab T.V. v. Comcast Cable Comm., Inc., 182 F.3d 851, 854-855 (11th Cir. 1999). The issue may be raised at both state and federal levels. Id. at 855. The doctrine of complete preemption focuses on whether the federal court, to which an action brought solely pursuant to state law claims has been removed, possesses federal question subject matter jurisdiction over the action. Id.

Complete preemption operates as a corollary, or, more accurately, an exception, to the well-pleaded complaint rule. Id. at 854. Ordinarily, the plaintiff is "master" of his own complaint, and can effectively prevent removal to a federal forum by refraining from pleading

---

[1] The defendant also claims that the Virginia action was dismissed by agreement with Plaintiff's counsel.

federal claims. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The defendant usually cannot remove a case brought solely pursuant to state law (assuming, of course, that diversity jurisdiction does not exist) simply by asserting a federal defense, even the defense of ordinary federal preemption. Blab T.V., 182 F.3d at 854 (citing Caterpillar, 482 U.S. at 393). In such a situation, the plaintiff's reliance on Romney, supra, would be well-placed– there are indeed instances in which state law claims are preempted, but in which the state court can make such a decision. These situations arise when a plaintiff brings an action in state court, totally grounded in state law, in which the state cause(s) of action are preempted by federal law, but in which neither diversity jurisdiction nor complete preemption exists. In contrast, the Fifth Circuit has characterized a state law case that may be completely preempted as one in which the claims, regardless of the state labels that the plaintiff attaches to them, give a federal court subject matter jurisdiction. McClelland v. Gronwaldt, 155 F.3d 507, 512 (5th Cir. 1998). The Supreme Court has described complete preemption as arising under "extraordinary" circumstances, specifically, when "the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar, 482 U.S. at 393.

**Complete Preemption and the Carmack Amendment**

The Supreme Court has not spoken to the issue of complete preemption in the context of the Carmack Amendment. The Eleventh Circuit also has not evaluated the issue. In fact, only two circuit courts have examined the issue of whether the Carmack Amendment preempts state law so completely that a state law suit alleging facts within its scope can serve as a basis for federal question removal jurisdiction. In Hunter v. United Van Lines, 746 F.2d 635, 643-646, 652 (9th Cir. 1984), the Ninth Circuit held that the Carmack Amendment does not provide the

5

basis for federal question removal jurisdiction solely because it preempts state law. In a later, unpublished opinion, Bormaster v. Express Shipping Ctr., Inc., 185 F.3d 865, 1999 WL 391044, **2 (9th Cir. 1999)(unpub.), a Ninth Circuit panel, describing the Carmack Amendment, stated that "The Carmack Amendment completely preempts state law . . . ." In light of the court's earlier holding, however, it is likely that the court was not using the phrase "completely preempts" as a term of art, but rather to simply say that the Carmack Amendment preempts every state cause of action that a plaintiff could possibly bring against an interstate motor carrier for lost or damaged goods. The cases that it cites in support for that statement, one of which is the Supreme Court's Adams Express opinion, another of which is the Fifth Circuit's Moffit opinion, discussed, *infra*, certainly do not stand for the proposition that a state claim that implicates Carmack automatically confers removal jurisdiction on a federal district court. Furthermore, although, were it using the phrase "completely preempts" as a term of art, it would directly contradict precedent already established in Hunter, the Bormaster opinion does not purport to overrule Hunter. The Ninth Circuit in Bormaster was likely using the phrase "completely preempts" to state that Carmack ordinarily preempts not just some of the state causes of action, but all of the state causes of action, but was not referring to the conferring of federal question removal jurisdiction. The only other circuit specifically to discuss the doctrine of complete preemption in the context of the Carmack Amendment is the Fifth Circuit, in Beers v. North American Van Lines, Inc., 836 F.2d 910 (5th Cir. 1988). This court also held that the Carmack Amendment did not have complete preemptive power. Id. at 913 n.3. Beers and a later Fifth Circuit case, Moffit v. Bekins Van Lines Co., 6 F.3d 305 (5th Cir. 1993) will be discussed in greater detail, *infra*.

       The high Court has not applied the doctrine of complete preemption lightly. Thus far, it

has specifically announced complete preemptive force under only two statutes: ERISA and the Labor Management Relations Act ("LMRA"). See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 560 (1968); Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23-24 (1983); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).[2] The Eleventh Circuit has described even these grants of power as "reluctant." Blab T.V., 182 F.3d at 855.

With such shrouded beginnings, the application of the doctrine of complete preemption is not a model of uniformity among the circuits and district courts. Although the Eleventh Circuit, in Blab T.V., presented a survey of the complete preemption tests of the other circuits, it decided the complete preemption issue before it without either adopting one of the already-existing tests or developing its own test.[3] See Id. at 856-857. Instead, the court concluded that the

---

[2] In fact, the preemptive force in ERISA arose from the Supreme Court's finding of sufficient similarity between the jurisdictional language of section 502(a) of ERISA and section 301 of the LMRA, found at 29 U.S.C. § 185, and reproduced, infra.

[3] According to the Blab T.V. court, "[t]he Eleventh Circuit has not addressed directly the application of the complete preemption doctrine outside of the context of the LMRA or ERISA, so we will look to those circuits that have done so for guidance. These courts have adopted several different two- and three-part tests for assessing complete preemption arguments. The Fourth Circuit examines whether: (1) the rights underlying the state cause of action are equivalent to the exclusive rights granted under a federal statute, and (2) the statutory language and legislative history evinces Congress's intent that litigation to protect the federal rights occur in federal courts. See Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229-33 (4th Cir.1993) (concluding that removal jurisdiction existed pursuant to the complete preemption doctrine for a state-law "copying by use of computer" claim that fell within the scope of section 301 of the Copyright Act). The Tenth Circuit has adopted a similar test, examining whether: (1) Congress has provided a federal cause of action to enforce the federal law, thus revealing an intent to allow removal in such cases, and (2) the state claim is displaced by federal law under an ordinary preemption analysis. See Schmeling, 97 F.3d at 1343 (concluding that no removal jurisdiction existed for state claim concerning employee drug testing because Federal Aviation Act regulations did not provide a federal cause of action). The Fifth Circuit has applied a three-part test, requiring: (1) the existence of a federal cause of action within the federal statute, (2) a provision conferring jurisdiction to the federal courts for the cause of action that "closely parallels" the jurisdictional provisions of the LMRA and ERISA, and (3) evidence of "the kind of congressional intent found to exist with respect to ERISA." Aaron v. National Union Fire Ins. Co. of Pittsburg, 876 F.2d 1157, 1164-65 (5th Cir.1989) (concluding that no removal jurisdiction existed for state wrongful death suit because the Longshore and Harbor Workers' Compensation Act did not contain a jurisdictional provision closely parallel to that contained in the LMRA and no evidence existed that Congress intended to allow removal). These cases reveal a varying emphasis on such questions as whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions. Despite the variations, however, "all [the tests] focus on a similar goal: to determine whether Congress not only

"jurisdictional puzzle" could be solved by evaluating the "expressions of congressional intent found in [the statutory section at issue], the [statute] in general, and the [statute's] legislative history." Id. at 857. The court also compared the language of the specific statutory section at issue, section 612 of the Cable Act, to section 301 of the LMRA, which the Supreme Court had held, in <u>Avco</u> and <u>Metropolitan Life</u>, supported complete preemption. Id. In the case of the <u>Blab T.V.</u> statute, the court found that Congress had not addressed the preemption issue directly in the statute's legislative history. Id. Although it found that the section's jurisdictional language was similar to that of section 301 of the LMRA, the fact that the Act's legislative history contained no indication "that section 612(a)'s jurisdictional language is intended to function in the same manner as section 301 of the LMRA," was an omission that the court considered to be "a persuasive argument against finding complete preemption in this case." Id.

      The court noted that the absence of expressions of complete preemptive intent in the statute's legislative history was not dispositive of the issue. Id. It continued the preemptive intent analysis with an examination of "surrounding provisions" in the Cable Act. Id. Significant to the court was the Act's provision for the "Coordination of Federal, State, and Local Authority," which, it found, "contemplates <u>the application of state law</u> and the exercise of state court jurisdiction to some degree with respect to cable services." Id. (emphasis added). That a state court could exercise jurisdiction over a cable service and, to a certain extent, <u>apply its own law</u>, "counsels against a conclusion that the purpose behind the [statute] was to replicate

---

intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one]." Miller, at 1797-98. The complete preemption analysis thus focuses primarily upon evaluating Congress's intent, which is the "touchstone" of federal court removal jurisdiction. Metropolitan Life, 481 U.S. at 66, 107 S.Ct. at 1548." <u>Blab T.V.</u>, 182 F.3d at 856-857.

the 'unique preemptive force' of the LMRA and ERISA." <u>Id.</u>

The lessons about complete preemption that can be gleaned from <u>Blab T.V.</u> are: (1) The mere creation of federal standards of regulation and a federal cause of action, even if they are accompanied by a statement of Congressional intent to "[develop] Federal case law precedent in this area" is insufficient in and of itself to support complete preemption. <u>Id.</u> at 858. Although such an act of Congress supports ordinary preemption, "[it] is not so unusual that it reveals an intent to replicate the jurisdictional force of the LMRA or ERISA." <u>Id.</u> (2) Similarity between the jurisdictional language of the statute in question and that of the LMRA is probative, but is not dispositive in light of other expressions (or lack thereof) of Congressional intent. <u>Id.</u> at 857. (3) The lack of any indication, in the legislative history of a statute, of complete preemptive intent, while not dispositive, is nevertheless significant. <u>Id.</u> (4) A statute's specific provision for concurrent state and federal jurisdiction and/or the application of both state and federal law weighs against complete preemption <u>Id.</u> at 858. (5) Finally, the overarching purpose of a complete preemption inquiry is "to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted in either a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal [one.]" <u>Id.</u> at 857; <u>see also</u> <u>Smith v. GTE Corp.</u>, ___ F.3d ___ 2001 WL 10395, *17 (11th Cir. 2001)(finding complete preemption doctrine unavailable in Federal Communications Act).

The <u>Blab T.V.</u> court's analysis raises a question about the application of complete preemption in the instant case. That Congress passed the Carmack Amendment with the intent to completely displace state laws affecting the liability of motor carriers for goods lost or

9

damaged during interstate delivery is arguably not dispositive. The Eleventh Circuit stated, "[t]hese circumstances . . . are common features found in many sections of the United States Code." Id. An examination of the legislative history of the Carmack Amendment is not particularly helpful because the bill was adopted silently, "without discussion or debate," <u>Rini v. United Van Lines, Inc.</u>, 104 F.3d 502, 504 (1st Cir. 1997)(citing 40 Cong. Rec. 7075 (1906)). It is widely acknowledged that by passing the Carmack Amendment, Congress intended to "adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." <u>Adams Express</u>, 226 U.S. at 506. However, even this desire for a uniform federal standard, to the Eleventh Circuit, is not "so unusual that it reveals an intent to [create complete preemptive jurisdictional force]." <u>Blab T.V.</u>, 182 F.3d at 858.

    A comparison of the jurisdictional language in the Carmack Amendment and that of Section 301 of the LMRA, entitled "Suits by and against labor unions," reveals a difference. According to the LMRA, "Suits for violation of contracts . . . may be brought <u>in any district court of the United States</u> having jurisdiction of the parties . . . ." 29 U.S.C. § 185(a) (emphasis added). Later in section 301, "(c) Jurisdiction: For the purposes of actions and proceedings by or against labor organizations <u>in the district courts of the United States</u>, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district which its duly authorized officers or agents are engaged in representing or acting for employee members." § 185(c) (emphasis added). The statute apparently confers jurisdiction over "suits by and against labor unions" exclusively in the United States district courts. The statute makes no direct provision for state jurisdiction.

    In contrast, the Carmack Amendment's section 14706(d), "Civil Actions" subpart (3), "Jurisdiction of courts," provides that "A civil action under this section may be brought in a

10

United States district court or in a State court." Section 14706(d)(4) defines "judicial district," as used in section 14706, as both a United States district court and a state court. Earlier, at section 14706(d)(1), the statute states that "A civil action under this section may be brought against a delivering carrier in a district court of the United States or in a State court." The statute is obvious evidence of Congress's intent that both the state courts and the federal courts have concurrent jurisdiction of liability suits against interstate motor carriers for lost or damaged goods. Of course, both courts would be required to apply the Carmack Amendment. Blab T.V. does not, however, provide a complete answer to the question here.

Carmack Amendment preemption decisions within the district courts of the Eleventh Circuit provide only limited assistance. In Fields v. Bennett Truck Transport, Inc., 1999 WL 1425403 (S.D. Ala. 1999), the plaintiffs argued that the Carmack Amendment's "preemptive scope" did not extend to actions for state common law intentional infliction of emotional distress. *2. The district court, relying on the former Fifth Circuit's interpretation of the statute's goal of providing uniformity in motor carrier liability decisions, found that the statute's scope of preemption was expansive enough to include the emotional distress count. *4. The court, however, did not address the question of complete preemption. Although the plaintiffs had brought solely state claims before the state court and the defendants had removed to federal court on the basis of Carmack preemption, the plaintiffs neither moved for remand nor challenged the federal court's subject matter jurisdiction.

The district court in Reeves v. Mayflower Transit, Inc., 87 F. Supp. 2d 1251, 1254 (M.D. Ala. 1999), found that the Carmack Amendment completely preempted the plaintiffs' state law causes of action. However, the court decided the case without reference to Blab T.V., which was decided only eight days earlier. The district court opinion relied almost completely upon the

11

wide scope of ordinary preemption, the statute's goal of uniformity, and the seeming disparity between two Fifth Circuit cases, Beers v. North American Van Lines, Inc., 836 F.2d 910 (5th Cir. 1988) and Moffit v. Bekins Van Lines Co., 6 F.3d 305 (5th Cir. 1993). 87 F. Supp. 2d at 1254.

In Beers, the earlier case, the Fifth Circuit held that the doctrine of ordinary preemption could not serve as the sole basis for removal federal question jurisdiction. Id. at 913.[4] The court specifically concluded that the Carmack Amendment "does not does not fall within the narrow exception of Avco and its progeny." Id. at n.3. The district court in Reeves characterized the later case, Moffit, as a "retreat" from Beers. 87 F. Supp. 2d at 1254. In Moffit, the Fifth Circuit stated that "the sole issue on appeal is whether the district court properly granted summary judgment on the basis that federal law, via the Carmack Amendment, preempts all of the Moffits' state law claims." 6 F.3d at 306. Although the Moffit plaintiffs had indeed brought their case in state court, solely under state law, and the defendants had removed the case on the grounds that preemption gave the district court federal question jurisdiction, the opinion does not state that the plaintiffs challenged the district court's subject matter jurisdiction. Id. On the contrary, the opinion merely examines whether the district court properly found that the Carmack Amendment preempted all of the plaintiffs' state law claims. Id.

Far from debating complete preemption, the Moffit plaintiffs argued that the Carmack Amendment did not preempt one or more their state claims at all. Id. at 307. The court's own statements, that to hold that the Carmack Amendment did not preempt all of the plaintiff's claims would "only lead to the morass that existed before the Carmack Amendment," and would

---

[4] It is not clear whether the Beers court purported to consider a Carmack Amendment kind of claim or an overriding insurance claim.

12

"defeat the purpose of the statute, which was to create uniformity out of disparity," suggests that the direct issue was not whether complete preemption had given the court federal question removal jurisdiction, but whether any court could hold the defendants liable under state law for actions that fell within the purview of the Carmack Amendment. It is also significant to note that, although Beers arguably held that the Carmack Amendment did not completely preempt state law for removal purposes, Moffit neither overturned Beers nor referenced it.[5]

Another case, Circle Redmont, Inc. v. Mercer Transportation Co., Inc., 78 F. Supp. 2d 1316 (M.D. Fla. 1999), is more consistent with the Blab T.V. court's cautious treatment of complete preemption. The facts are similar to those of the instant case: the plaintiff brought an action against an interstate transportation company, claiming only state law causes of action. 78 F. Supp. 2d at 1317. The defendant attempted to remove the case to the federal district court, claiming that Carmack preemption gave the district court subject matter jurisdiction. Id. The plaintiff moved for remand. Id. The district court remanded the case, relying in large part on the Blab T.V. opinion. Id. at 1318, 1320. It found that the Supreme Court and Eleventh Circuit's hesitation to expand the doctrine, coupled with the statute's provision for concurrent state and federal jurisdiction over Carmack claims, and the utter lack of legislative history indicating that Congress intended for the Carmack Amendment to operate in the same way as section 301 of the LMRA, weighed decisively against a finding of complete preemption. Id. at 1319. The court stated that "because the complete preemption doctrine applies only in extraordinary circumstances and because the Carmack Amendment's language and history do not manifest an intent to make state law claims removable as Carmack claims, the complete preemption doctrine

---

[5] It is doubtful that a three-judge panel decision could alter the precedential value of an earlier decision of the same court.

does not apply to give this court jurisdicion." Id.

## CONCLUSION

This court is, of course, bound by the holding of Blab T.V. There is, however, at least one significant distinction between the statute considered in Blab T.V. and the Carmack Amendment. As interpreted by the Eleventh Circuit, the provisions of the statute considered in Blab T.V. "contemplate the application of state law . . . ." The persuasive, if not controlling, authority suggests that there is no such contemplation under the Carmack Amendment.[6] Another distinction between the statutes in Blab T.V. and GTE and the Carmack Amendment is that the Eleventh Circuit found that, with respect to the Cable Act and the Communications Act, there was little evidence that Congress had intended to completely preempt state law. Blab T.V., 182 F.3d at 857-859; GTE, 2001 WL 10395 at *18-*19. Further, in its evaluation of the Communications Act, the GTE court considered not only statements in the legislative history surrounding the statutes, but also interpretive statements from the FCC that discussed Congress's

---

[6] Admittedly, there is a provision within the Carmack Amendment that resembles a "savings clause." Originally codified at 49 U.S.C. § 10103, and recodified in 1996 at 49 U.S.C. § 15103, the clause states that "Except as otherwise provided in this part, the remedies provided under this part are in addition to the remedies existing under another law or common law." This section suggests a Congressional intent that state law, and not just state jurisdiction, operate beside the Carmack Amendment. However, as the Tenth Circuit noted, in a thorough analysis of the provision's history and application, it "is not given the slightest recognition in . . Supreme Court decisions as a possible alternative avenue by which a shipper can ignore its bargained-for limitation of a carrier's liability for negligent damage to the shipper's goods. The reason is explained in Adams Express Co., where the Supreme Court imposed an exceedingly narrow construction on the proviso: 'But it has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to. . . . To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing State laws, for the latter view would cause the proviso to destroy the act itself." Underwriters of Lloyds of London v. North American Van Lines, 890 F.2d 1112, 1118-1119 (10th Cir. 1989)(quoting Adams Express, 226 U.S. at 507-08). Because the provision, throughout its entire history, has been given negligble weight by the Supreme Court to the extent that the Court characterizes its literal application as a threat to the exclusive nature of the Carmack Amendment, the provision can play no persuasive part in this court's analysis.

14

intent. GTE, 2001 WL 10395 at *18. The court found the FCC interpretation of the Communications Act's preemptive force, that "we preempt the states here only to the extent that their . . . regulation is at odds with the regulatory scheme set forth," to weigh against super preemption. Id. While as was the case with the Communications Act, there is a dearth of legislative history surrounding the Carmack Amendment, there is a plethora of Supreme Court, circuit court, and district court cases that interpret the Carmack Amendment and attempt to ascertain Congressional intent from an analysis of its provisions.

The Supreme Court has held in no uncertain terms that the Carmack Amendment supersedes all state laws purporting to govern the liability of interstate carriers for goods lost or damaged during interstate shipment. In Adams Express, the Court stated that "[I]t is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject . . . [a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." Adams Express, 226 U.S. at 505-506. In Charleston & Western Carolina Railway Co. v. Varnville Furniture Co., 237 U.S. 597, 603 (1915), the Court held that "state statutes are preempted by the Carmack Amendment if they in any way enlarge the responsibility of the carrier for loss or at all affect the ground of recovery, or the measure of recovery." A final example may be found in Missouri Pacific Railroad Co. v. Porter, in which the Supreme Court stated that:

> "Congress must be deemed to have determined that the rule laid down and the means provided to enforce it are sufficient and that no other regulation is necessary. Its power to regulate such commerce and all its instrumentalities is supreme; and, as that power has been exerted, state laws have no application. They cannot be applied in coincidence with, as complementary to or as in opposition to, federal enactments which disclose the intention of Congress to enter a field of regulation that is within its jurisdiction."

273 U.S. 341, 345 (1927).

The pervasiveness of the Carmack Amendment's preemptive effect in this area of commercial liability is reflected, to a less cohesive extent, in circuit court case law. For example, in <u>Gordon v. United Van Lines</u>, 130 F.2d 282, 288-289 (7th Cir. 1997), the court stated that "the Carmack Amendment bars a shipper from seeking any other remedy either state statutory or common law provides against a carrier for damages to the shipper's goods that have been transferred in interstate commerce." (citing <u>Hughes v. United Van Lines, Inc.</u>, 829 F.2d 1407, 1414-1415 (7th Cir. 1987). In <u>Cleveland v. Beltman North American Co.</u>, 30 F.3d 373, 381 (2d Cir. 1994), the Second Circuit concluded that "because the issue of a shipper's compensation for actual loss or injury to its property has been comprehensively and directly addressed by the Carmack Amendment, a federal common law cause of action--even assuming such exists--is displaced by the Act that has established those remedies Congress deems appropriate in this field." The Fifth Circuit, in <u>Air Products & Chemicals, Inc. v. Illinois Central Gulf Railroad Co.</u>, 721 F.2d 483, 486 (5th Cir. 1983), stated that

> "Moreover, a purpose [of Congress] was to substitute a paramount and uniform national law as to the rights and liabilities of interstate carriers subject to the Amendment. . . . 'That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. . . . To hold that the liability therein declared may be increased or diminished by local regulation . . . will either make the provision less than supreme, or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment.'"

(quoting <u>Adams Express</u>, 226 U.S. at 505-06).

The following district court cases have specifically held that the Carmack Amendment completely preempts any such purported state law so as to allow removal of exclusively state law claims initially brought in state court actions: <u>Reeves v. Mayflower Transit, Inc.</u>, 87 F. Supp.

16

2d 1251 (M.D. Ala. 1999); <u>Construction Services, Inc. v. Watkins Motor Lines, Inc.</u>, No. 98-0628, slip op. at 9 (N.D. Ala. May 5, 1998); <u>Duerrmeyer v. Alamo Moving & Storage</u>, 49 F. Supp. 2d 934 (W.D. Tex. 1999); <u>Ash v. Artpak International, Inc.</u>, 1998 WL 132932 (S.D.N.Y. 1998)(unpub.); <u>Carraway v. Mayflower Transit, Inc.</u>, 36 F. Supp. 2d 262 (N.D.N.C. 1998); <u>Carraway v. Mayflower Transit, Inc.</u>, 36 F. Supp. 2d 262 (N.D.N.C. 1998); <u>Woods v. Unigroup, Inc.</u>, 945 F. Supp. 1255 (E.D. Mo. 1996); <u>Counter v. United Van Lines, Inc.</u> 935 F. Supp. 505 (D. Vt. 1996); <u>Simmons v. United Parcel Service</u>, 924 F. Supp. 65 (W.D. Tex. 1996); <u>Pierre v. United Parcel Service</u>, 774 F. Supp. 1149 (N.D. Ill. 1991).

     This court recognizes that the Carmack Amendment creates concurrent jurisdiction in state and federal courts. Concurrent jurisdiction, however, does not, in and of itself, prevent removal of federal claims which may be maintained in either state or federal courts, but which, nevertheless, are removable. When the actions are not removable, the federal statutes clearly state so. For example, Congress has unambiguously precluded removal of FELA actions, workmen's compensation claims, and cases pursuant to section 40302 of the Violence Against Women Act of 1994, that are initially brought in state court. <u>See</u> 28 U.S.C. § 1445.

     An analysis of what would happen were this court to remand this cause demonstrates why it would be illogical to do so. The state court, on remand, would be required to dismiss all the state law claims. This would result in either a full dismissal of the plaintiff's action or the allowance of an amendment to bring the action under the Carmack Amendment. Upon the later action, the defendant could again remove the cause based upon the clear federal question. Such circularity would not only be unreasonable and unnecessary, it would run counter to logic, common sense, and judicial economy. In light of its pervasive preemption of state law, Supreme Court and circuit court interpretations of Congressional intent, persuasive authority from other

17

district courts, and the interest of judicial economy, this court hereby holds that the Carmack Amendment completely preempts state law so as to give the court removal jurisdiction. The court will deny the plaintiff's motion to remand.[7] In addition, based upon the preceding analysis and conclusions, this court will grant the defendant's Motion to Dismiss, filed on December 14, 2000. The plaintiff has leave of fifteen (15) days to amend its complaint to state clearly a claim under the Carmack Amendment.

This 22nd day of February, 2001

/s/ Robert B. Propst
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] In the alternative, the court concludes that the action is removable pursuant to the "substantial federal question" doctrine. See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813-815 (1986); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 13-14 (1983)("Even though state law creates appellant's causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties."). The case will clearly have to be decided pursuant to federal law.